# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DELMON MARZETT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7473-DMD** |
| **MARLIN GUSMAN** | |

## ORDER AND REASONS

Plaintiff, Delmon Marzett, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Louisiana. Because some his claims arose during his incarceration at the Orleans Justice Center in New Orleans, Louisiana, those claims were severed and transferred to this Court. Marzett v. Tigner, Civ. Action No. 1:18-CV-110, 2018 WL 3734221 (W.D. La. July 6, 2018), adopted, 2018 WL 3733614 (W.D. La. Aug. 6, 2018).[1]

In his complaint, plaintiff stated the severed and transferred claims as follows:

> On January 19, 2017, I was arrested in New Orleans and brought to the booking area of Central Lock-up. At the time, the booking officers refused to admit me to jail because my medical condition required more than their facility could provide. Because I had recently undergone knee replacement surgery and my knee was still badly swollen and appeared to be infected, the jail sent me to LSU-University Medical Center. Eventually I was released back to Orleans Parish Jail and into police custody.
> After being returned to the Lock-up the deputies informed me that I was being called to appear in court. After a disagreement between the transporting officers as to the use of restraints on my legs I was fully restrained in shackles on my hands and legs that were handcuffed with a metal box at the hip which allowed no movement of my hands at all. This type of restraint demands that a prisoner with severe medical issues be assisted in every movement up or down stairs, or in or out of any vehicle.
> After I was secured in full restraints and without a wheelchair, crutches or a cane, I was made to walk without assistance to a van for transport. I was in severe pain and discomfort and was very agitated telling the officers this was wrong and

---
[1] Rec. Docs. 11 and 12.

they were risking future damages to my knee. The officers ignored my pleas and eventually I was placed into a waiting transport van. The trip was made to the courthouse and after arrival the transporting officers stood outside the van smoking cigarettes instead of assisting me in getting out of the van. As a result I fell head first onto the concrete and was knocked unconscious. I was immediately rushed back to the LSU Medical Center. At UMC a MRI was done which indicated severe damage to my spine. I remain in severe pain and am unable to sleep for any extended period of time without waking up due to the pain. I am unable to turn my head but rather have to turn my entire body to see behind me.

      I received no follow up treatment from Sheriff Gusman despite my repeated pleas to him by correspondence and phone calls from family members to be seen by medical again. As a result Sheriff Gusman was personally aware of the situation and deliberately failed to act due to his policies in place regarding outside medical assistance.[2]

Plaintiff has properly named only one defendant with respect to the foregoing claims: Sheriff Marlin Gusman. To the extent that plaintiff also intended to sue the transporting deputies or any other jail or medical department employees, he never amended the complaint to identify those individuals and, as a result, they have never been properly named as defendants.[3]

## I. Motion for Summary Judgment

Sheriff Gusman has now filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[4] Plaintiff opposes that motion.[5]

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a

---

[2] Rec. Doc. 5, p. 4.
[3] See Hill v. Strain, Civ. Action No. 08-4768, 2010 WL 111062, at *3 (E.D. La. Jan. 11, 2010) ("Plaintiff may not pursue claims against the unidentified medical personnel and/or sheriff deputies …. A § 1983 action must be filed against an actual identified person. Therefore, plaintiff's claims against the unidentified defendants should be dismissed as frivolous and for otherwise failing to state a claim upon which relief can be granted."); Francis v. Terrebonne Parish Sheriff's Office, Civ. Action No. 08-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009); Staritz v. Valdez, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); Banks v. United States, Civ. Action No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007).
[4] Rec. Doc. 28.
[5] Rec. Doc. 35.

rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

### A.  Transportation Claim

In this lawsuit, plaintiff claims that his rights were violated because he was transported in an unsafe manner. In connection with his motion for summary judgment, Sheriff Gusman has submitted an affidavit of Michael Laughlin regarding the applicable policy for transporting inmates. In that affidavit, Laughlin states:

> 1. I am employed by the Orleans Parish Sheriff's Office and am commissioned at the rank of Chief.
>
> 2. I am familiar with the policies and procedures of the Orleans Parish Sheriff's Office.
>
> 3. Inmates who were recently arrested and booked into the Orleans Justice Center are transported to the Criminal District Court within 48 hours of their arrest for purposes of appearing before a magistrate pursuant to La. C.Cr.P. art. 230.1.
>
> 4. All inmates in the custody of the OPSO are transported in full restraints, consisting of handcuffs, belly-chains (a belt to which handcuffs are secured at the waist to prevent vertical movement) and shackles, which are restraints placed on the ankles to prevent an individual from running, though allowing sufficient movement to walk and traverse stairs. This is done for the safety of OPSO staff, other inmates, the Court, and the general public.[6]

In the complaint, plaintiff did not specify his theory for holding Sheriff Gusman liable with respect to his transportation claim. However, two possible theories readily spring to mind, although neither aids plaintiff.

First, Sheriff Gusman could be held liable with respect to the transportation claim if he was *personally involved* in the incident giving rise to the claim. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Certainly § 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." (citation omitted)). However, there is no allegation that Sheriff Gusman was personally involved in transporting plaintiff on the occasion at issue in this case.

Second, Sheriff Gusman could also be held liable if he was deliberately indifferent to a need to protect plaintiff from substantial risk of serious harm while being transported.[7]

---

[6] Rec. Doc. 28-5.
[7] See Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) ("[W]e hold (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.").

4

Specifically, under this theory, the claim would be that Sheriff Gusman failed to properly train his subordinates on safe methods of transporting restrained prisoners who, like plaintiff, suffer from mobility impairments. However, while it is true that such failure-to-train claims are generally actionable, plaintiff's allegations fall far short of what is required to state such a claim for the following reasons.

> The United States Fifth Circuit Court of Appeals has held:
>
> A supervisor may … be liable for failure to … train if: (1) the supervisor … failed to … train the subordinate official; (2) a causal link exists between the failure to train … and the violation of the plaintiff's rights; and (3) the failure to train … amounts to deliberate indifference.
>
> ….
> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. *A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner …, a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in de facto respondeat superior liability.*

Porter v. Epps, 659 F.3d 440, 446-47 (5th Cir. 2011) (emphasis added; citations, quotation marks, brackets, and ellipses omitted); see also Brown v. Bryan County, 219 F.3d 450, 459 (5th Cir. 2000) (a failure-to-train claim requires deliberate indifference; "mere negligence in failing to train" is insufficient for liability). Here, there is no allegation that Sheriff Gusman had actual or constructive knowledge of a pattern of similar incidents in which mobility-impaired inmates were injured while being transported in restraints. On the contrary, plaintiff conceded in his deposition

5

that he had never fallen from the transportation van on any of his many prior periods of incarceration and that he was unaware of any such incidents involving other inmates.[8]

The Court recognizes that that the foregoing general rule has an exception: a failure-to-train claim can be based on a single incident (rather than a pattern) *if* the constitutional violation at issue was the "highly predictable consequence" of the particular failure to train. See, e.g., Davidson v. City of Stafford, 848 F.3d 384, 397 (5th Cir. 2017). However, the United States Fifth Circuit Court of Appeals has noted that "[t]he single incident exception … is a narrow one, and one that we have been reluctant to expand." Burge v. St. Tammany Parish, 336 F.3d 363, 373 (5th Cir. 2003).

In Brown v. Bryan County, the case in which the Fifth Circuit first acknowledged the existence of the "single incident" exception, the court took care to note that a plaintiff seeking to impose liability based on the exception faces a daunting burden: he must be able to show the defendant's "unmistakable culpability and clearly connected causation." 219 F.3d at 461. Moreover, courts have been quick to distinguish Brown by noting that the finding of liability in that case stemmed from the particularly egregious facts involving the use of excessive force by a twenty-one year old, untrained reserve deputy with a history of violent behavior.[9] Because such

---
[8] Rec. Doc. 28-7, pp. 46-47 and 59.
[9] See, e.g., Curran v. Aleshire, 67 F. Supp. 3d 741, 759 (E.D. La. 2014) ("[Brown] contains three underpinnings …. First, the court found that the sheriff provided *no* training or supervision (at least not formally) to the offending officer. Second, the court observed the background of the officer at issue, which included the following: no prior experience or education in law enforcement; twenty-one years of age; arrests for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, nine moving traffic violations, an outstanding arrest warrant; and, an "excessive number of takedown arrests" in his few weeks on the job similar to but preceding the central incident in that case. Third, … the court explained why it upheld a finding that the sheriff had notice of the officer's background. It came to this conclusion on the basis of the family relationship between the sheriff and the officer, the small size of the police department, the arrests that the sheriff had authorized the officer to make, and the sheriff's recent review of the officer's background file made available to him containing the information regarding his arrests." (citations omitted)), appeal dismissed, 800 F.3d 656 (5th Cir. 2015); Williams v. City of Cleveland, Civ. Action No. 2:10cv215, 2012 WL 3614418, at *18 (N.D. Miss. Aug. 21, 2012) ("The Fifth Circuit has considered single violation liability several times, and, with only one exception in some thirty years since Monell, has consistently rejected application of the single incident exception. The sole exception, Brown v. Bryan County, involved a failure to train a neophyte on the constitutional limits to the use of force. The facts of

egregious facts are not present in most cases, the exception is rarely found to be applicable. See Littell v. Houston Independent School District, 894 F.3d 616, 627 n.6 (5th Cir. 2018) ("We count only one published 'single incident' failure-to-train case in our circuit in which the plaintiff prevailed.").

Here, plaintiff's factual allegations in no way support a contention that the "single incident" exception would apply. For example, he has not alleged any egregious facts analogous to those in Brown, any facts concerning the training protocols for transporting officers at the Orleans Parish Sheriff's Office, or any facts concerning the level of supervision of those officers.

In summary, plaintiff has not alleged that Sheriff Gusman was personally involved in this incident. Plaintiff also has not stated a proper failure-to-train claim by (1) alleging that Sheriff Gusman had actual or constructive knowledge of a pattern of similar incidents or (2) establishing that the "single incident" exception applies. Therefore, there is no basis for holding Sheriff Gusman liable for plaintiff's fall from the transportation van.

## B. Medical Claim

It appears that plaintiff may also be attempting to hold Sheriff Gusman liable for the allegedly inadequate medical care plaintiff received after the fall. If so, that claim also fails for the following reasons.

First, it appears that Sheriff Gusman would not be a proper defendant with respect to such a claim. Again, there is no indication that that Sheriff Gusman was *personally involved* in

---

Brown demonstrate that single violation liability applies *only in extreme circumstances*. In Brown, the offending officer was the sheriff's nephew who had been on the job for only a few weeks and had no education or experience whatsoever in law enforcement. Moreover, shortly before joining the sheriff's office, he had been arrested for several crimes, including assault and battery." (emphasis added; citations omitted)), aff'd, 736 F.3d 684 (5th Cir. 2013); Burrell v. Adkins, Civ. Action No. 3:01CV2679, 2008 WL 130789, at *2 (W.D. La. Jan. 10, 2008) ("The facts of Brown are illuminating. There, the direct offender was a reserve officer (not a full-fledged deputy) who had been hired with *no* experience and *no* training and who had already demonstrated a propensity for unnecessarily rough treatment of arrestees over just a few weeks on the job.").

7

plaintiff's medical care. On the contrary, it must be noted that the medical care at the Orleans Justice Center is not administered by Sheriff Gusman or his staff; rather, it is independently administered by Correct Care Solutions ("CCS"), a private corporation which holds a contract to provide medical care to the inmates.[10]

In any event, even if there is a basis for holding Sheriff Gusman liable with respect to a claim for inadequate medical care, the care plaintiff received did not violate constitutional standards for the following reasons.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. The United States Fifth Circuit Court of Appeals has held, however, that the right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Here, even if the plaintiff could prove that he had "serious medical needs,"[11] he clearly cannot establish that those needs were met with "deliberate indifference." Regarding that prong of the analysis, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether

---

[10] See Jones v. Gusman, Civ. Action No. 12-859, 2015 WL 4397170, at * 1 (E.D. La. July 16, 2015) ("The Sheriff and CCS executed a contract for the provision of medical and mental health care to the inmates of Orleans Parish Prison …."); Jones v. Gusman, Civ. Action No. 12-859, 2015 WL 13529553, at * 1 (E.D. La. May 29, 2015) (noting that the Sheriff solicited, negotiated, and executed "a contract with CCS, an entity 'in the business of administering correctional health care services'").

[11] The United States Fifth Circuit Court of Appeals has held that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Sheriff Gusman has submitted plaintiff's medical records in connection with the motion for summary judgment. For the following reasons, the Court finds that those medical records rebut any allegations of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Plaintiff's medical records confirm that he was transported to the University Medical Center emergency department after falling from the van. The records from the emergency department state:

> 44 y/o M brought to ED by police for pain in his left wrist that began yesterday after injuring himself by falling. The pt has a PMH of HTN and is an IVDU. He denies numbness, tingling, discolorationog [sic] the left wrist but states that its "hard to bend or use it". He denies having any specific alleviating factors and states that "putting pressure on his had [sic] makes it worse". The pain has a 6/10 intensity and has a "dull" sensation.[12]

The notes further state: "Hand, Wrist, Elbow and forearm xray's were ordered and the pt was administered percocet for pain. Concern for fxr/dislocation. Discussed with Ortho and Hand. *Both services note that these are old injuries. No acute fxr/dislocation.* Pt is neurovascularity

---
[12] Rec. Doc. 28-6, p. 37.

9

intact."[13] Emergency department doctors then diagnosed plaintiff as having "Left wrist pain and Arthritis of wrist."[14] They recommended that "[p]ain medication to be prescribed as appropriate by offender's facility," as well as "Rest, Ice, and Ibuprofen."[15]

During that same emergency department visit, plaintiff was also evaluated for complaints of neck and lower back pain. An x-ray of his lower back *revealed no fracture*; however, the emergency department staff nevertheless noted that he was cleared for a "C collar" (more commonly referred to as a cervical collar or neck brace) and, again, recommended that "[p]ain medication to be prescribed as appropriate by offender's facility."[16]

After plaintiff was then returned to the Orleans Justice Center, CCS's medical records show that he was evaluated upon his arrival at the facility, placed on a detox protocol for drug use, prescribed Ibuprofen (a nonsteroidal anti-inflammatory drug used to treat pain), Flexeril (a muscle relaxant), a bottom bunk, and daily warm showers; it was further noted that he should be reevaluated for neck pain in two weeks.[17] The records reflect that he was in fact reevaluated by CCS staff on February 1, 2017. The notes from that examination state: "Full ROM to back demonstrated picking scale up off floor place on sick call cart. Full ROM to neck."[18] It was also noted that no further follow-up was thereafter required; however, plaintiff was advised to apply a warm compress to the affected area, take warm showers, and return to sick call as needed.[19]

As is evident from these records, plaintiff's medical needs were not ignored. Rather, he was evaluated by CCS medical staff upon his return from University Medical Center emergency department, prescribed pain medication is accordance with the emergency department's

---

[13] Id. at p. 40 (emphasis added).
[14] Id. at p. 36.
[15] Id. at p. 40.
[16] Id. at pp. 42-46.
[17] Id. at pp. 10-12
[18] Id. at p. 49.
[19] Id.

recommendations, and reevalauted by CCS staff two weeks later. At that reevaluation, he demonstrated a normal range of motion, and it was determined that no further treatment or follow-up was required.

Although plaintiff may disagree with that determination, it is clear that, absent exceptional circumstances, a disagreement concerning treatment does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference).

The foregoing conclusion is not changed by the fact that a plaintiff's medical problems were not cured. Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims

of negligence or medical malpractice present issues of *state law* for *state courts*, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. They were not.

For all of these reasons, defendant's motion for summary judgment must be granted.

## II. Motion for a Temporary Restraining Order and a Preliminary Injunction

Plaintiff has filed a Motion for a Temporary Restraining Order and a Preliminary Injunction.[20] Despite his request for a temporary restraining order, his motion must be construed solely as one for a preliminary injunction because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order. Neal v. Federal Bureau of Prisons, 76 F. App'x 543, 545 (5th Cir. 2003).

The law regarding the granting of preliminary injunctions is clear:

> Under well settled Fifth Circuit precedent, a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest.

Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997). Here, plaintiff cannot make it past even the first of those criteria. Because his claims must be dismissed for the reasons already explained, he obviously cannot demonstrate that there is "a substantial likelihood of

---
[20] Rec. Doc. 34.

success on the merits." Therefore, necessarily, his motion for a preliminary injunction must be denied.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment, Rec. Doc. 28, is **GRANTED**.

**IT IS FURTHER ORDERED** that all of plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction, Rec. Doc. 34, is **DENIED**.

New Orleans, Louisiana, this __27th__ day of August, 2019.

                                                                          **DANA M. DOUGLAS**
                                                                          **UNITED STATES MAGISTRATE JUDGE**